UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:11-CR-0511 WBS |
| Plaintiff, | |
| v. | ORDER DENYING MOTION FOR NEW TRIAL |
| ANDREW B. KATAKIS and DONALD M. PARKER, | |
| Defendants. | |

----oo0oo----

Before the court is defendant Andrew B. Katakis' Second Amended Motion for New Trial Under Fed. R. Crim. P. 33 filed February 21, 2017 (Docket No. 611), and defendant Donald M. Parker's joinder in Katakis' motion (Docket No. 622).

I. Factual and Procedural History

This case concerns allegations of a scheme to rig bids at public real estate foreclosure auctions in San Joaquin County, California in 2008 and 2009. Specifically, the government alleges that Katakis and Parker, two real estate investors, along

1

with other individuals, and aided by auctioneer or "crier" W. Theodore Longley, agreed not to compete to purchase certain properties at public auctions, designated which conspirator would bid for the properties at the auctions, refrained from bidding for the properties, and made payoffs to and received payoffs from one another in return for refraining from bidding at the auctions. (Superseding Indictment 3-4 (Docket No. 136).)

The agreement eventually developed into a scheme whereby Katakis and others agreed that only one person would bid on a property at the public auction on the courthouse steps, and then the conspirators would hold a secondary auction or "round robin" across the street. The winner of the secondary auction would then pay the other bidders at the secondary auction the "pot," or the difference between the price paid at the public auction and the round robin, with each failed bidder receiving a portion, or "chop," of the pot. The government also alleges that after Katakis learned about the government's investigation into the conspiracy, he deleted emails using computer software to overwrite the records so they could not be recovered, in an attempt to obstruct the investigation. (Superseding Indictment 8-9.)

In the Superseding Indictment, the government charged defendants Katakis, Parker, and Longley with violation of the Sherman Antitrust Act under 15 U.S.C. § 1 and conspiracy to commit mail fraud under 18 U.S.C. § 1349.[1] The government also

---

[1] The government charged and obtained convictions against several other individuals in connection with the bid rigging scheme.

charged Katakis with obstruction of justice under 18 U.S.C. § 1519. After a twenty-three day jury trial,[2] the jury found Katakis and Parker guilty of the Sherman Act antitrust charge but was unable to reach a verdict on the mail fraud charge. The jury also found Katakis guilty of the obstruction of justice charge. The jury acquitted Longley on both the Sherman Act antitrust and mail fraud charges. (Docket Nos. 277, 278, 279.)

After trial, Katakis moved for a new trial on his antitrust conspiracy conviction and separately moved for judgment of acquittal as to the obstruction of justice conviction. This court granted the motion for judgment of acquittal on the obstruction conviction, holding that evidence was insufficient to show that Katakis actually deleted or concealed electronic records or files. (Docket No. 317.) The Ninth Circuit affirmed, holding, among other things, that while there was "truly overwhelming" evidence of Katakis' intent to delete emails, there was insufficient evidence that he actually deleted any emails. United States v. Katakis, 800 F.3d 1017, 1027 (9th Cir. 2015).

After the Ninth Circuit affirmed this court's judgment of acquittal as to Katakis' obstruction of justice conviction, and after Katakis obtained extensive further discovery, Katakis filed his Second Amended Motion for a New Trial, and Parker

---

[2] Parker moved to sever his case from Katakis' before trial, arguing that he would be unduly prejudiced by the introduction of evidence against Katakis regarding Katakis' destruction of records. (Docket No. 154.) The court denied the motion, holding that he had not presented any persuasive argument to compel a departure from the general principle that defendants jointly charged are to be jointly tried, particularly where the co-defendants are charged with conspiracy. (Docket No. 174.)

3

joined in the motion.

II. <u>Legal Standard</u>

Under Federal Rule of Criminal Procedure 33(a), a "court may vacate any judgment and grant a new trial if the interest of justice so requires." In evaluating a motion for a new trial under Rule 33, "[t]he court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." <u>Id.</u> The burden of justifying a new trial rests with the defendant, <u>United States v. Endicott</u>, 869 F.2d 452, 454 (9th Cir. 1989), and "[a] motion for new trial is directed to the discretion of the judge," <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981). <u>Accord</u> <u>United States v. Kellington</u>, 217 F.3d 1084, 1097 (9th Cir. 2000) (district court's decision to grant or deny a new trial is reviewed for abuse of discretion). While the burden on a motion for new trial is not as demanding as that for a motion for acquittal, such motions are generally disfavored and should only be granted in exceptional cases. <u>See</u> <u>United States v. Del Toro-Barboza</u>, 673 F.3d 1136, 1153 (9th Cir. 2012).

III. <u>Discussion</u>

1. <u>Newly discovered evidence</u>

Katakis' first argument in support of his motion is that he is entitled to a new trial based the discovery of new evidence obtained after trial. Specifically, he contends that new evidence, including a declaration from his co-defendant Wiley Chandler, shows that Chandler, Richard Northcutt, Ken Swanger, and Steve Swanger were conspiring against him and his companies,

causing him to purchase properties at inflated prices and enriching themselves in the process. In his view, had the jury been presented with this additional evidence of the alleged conspiracy against Katakis, the jury would have discredited the cooperating witnesses' testimony and would have concluded that Katakis did not engage in a conspiracy which had the objective of defrauding him.[3]

To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must show that (1) the evidence was newly discovered; (2) the failure to discover the evidence sooner was not the result of a lack of diligence on the defendant's part; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor merely impeaching; and (5) the evidence indicates that a new trial would probably result in acquittal. United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005) (quoting United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir. 1991)).

Here, even assuming Katakis has met all the other requirements of Harrington, 410 F.3d at 601, he has not shown that the new evidence he has identified would probably result in acquittal if he was allowed to present it in a new trial. Katakis' new evidence may support a theory that alleged co-conspirators Northcutt, Chandler, and the Swangers were profiting at Katakis' expense. However, evidence that these individuals were conspiring against Katakis does not disprove the persuasive

---

[3] Parker does not address Katakis' new evidence in his joinder or reply.

evidence presented at trial tending to show Katakis was a participant in the primary conspiracy of bid rigging.

While the jury could infer that Katakis was an innocent bystander being swindled by his co-defendants and others, an equally if not more compelling inference from the evidence presented at trial and on the motion for new trial is that Katakis fully participated in the bid rigging scheme by agreeing not to bid on certain properties, paying others not to bid, and receiving payments for not bidding, all while being swindled by his co-conspirators.[4] Notably, Chandler has never stated that Katakis did not participate in the agreements not to bid or that Katakis did not give or receive payouts. And the jury would hear that Chandler provided statements in support of Katakis only after Katakis agreed to dismiss his civil suit against Chandler, thus giving the jury reason to question Chandler's new testimony as a result of a deal between the two of them.

Even discounting the testimony of the individuals alleged to have conspired against Katakis, there was ample evidence for the jury to infer that Katakis knowingly participated in the bid rigging scheme. Among other things, emails to and from Katakis regarding partner buyouts, along with

---

[4] Notably, the jury heard evidence that even though bidders at the round-robin or secondary auctions sometimes drove up prices through bluffing, overall bidders were getting properties for less than what they would have paid through competitive bidding at the auctions on the courthouse steps. (See, e.g., Gov't Ex. A Part 1 at 127 (Docket No. 625-2) (testimony of Anthony Ghio).) Thus, the jury could find that Katakis still had the financial incentive to participate in bid rigging even while Northcutt, Chandler, and the Swangers were siphoning away funds from Katakis and his companies.

6

the associated records and checks for partner buyouts; Katakis'
email telling Steve Swanger to buy gift cards for the crier; and
testimony of other witnesses were more than enough for the jury
to infer Katakis' knowing involvement without crediting the
testimony of Northcutt, Chandler, and the Swangers. (See, e.g.,
Gov't Ex. A Part 1 at 105 (Docket No. 625-2) (Anthony Ghio
testifying that Katakis was going to start buying properties at
auctions in Stockton "and was hoping we could all get along and
not beat each other up every day,"; Gov't Ex. C at 6-7 (Docket
No. 631) (email from Katakis to Steve Swanger titled "Gift Cards"
which reads "Please get if you haven't. Need ASAP as leverage.
Very, very important to our success. Gift Cards + Crier =
$$$$$$$"; Gov't Ex. C at 8 (emails between Katakis and Steve
Swanger discussing whether they "owe one to Rick and Wiley"
because "they let us get" a property "at opening 198K" that was
"pending across the street for 300K" and how Wiley "wanted 5k
from me for them to back off"); Gov't Ex. C at 9-10 (email from
Katakis to Steve Swanger discussing accounting for "partner
buyouts," with Katakis stating "if we do a partner buyout and you
put it into rehab," one amount should be listed for "actual
rehab" and another amount for "B-Under Estimated Rehab," and "I
will know what this means. (Buyout = B)"); Gov't Ex. C at 12-14
(emails from Steve Swanger to Katakis listing purchase price,
partner buyout amount, and value of certain properties); Gov't
Ex. C at 15 (emails between Katakis and Steve Swanger in which
Katakis states that "Michael time knows about the partnership buy
out thing. FYI," and Swanger responds "I know, he's fairly

7

smart, I have always danced around it, but he figured it out on his own.")).

As Katakis' new evidence does not show that a new trial would probably result in acquittal, the court declines to grant a new trial based on newly discovered evidence.

   2.   <u>Prejudicial spillover</u>

Katakis next argues that the government presented false and prejudicial evidence regarding Katakis' use of the "DriveScrubber" software, leading the jury to convict Katakis of obstruction of justice based on insufficient evidence and leaving the jury unable to fairly assess the evidence on the bid rigging charge. Similarly, Parker argues that the jury may have improperly convicted him based on the obstruction evidence introduced against Katakis.

Prejudicial spillover, or retroactive misjoinder,[5] occurs where joinder of multiple counts or defendants was proper initially, but later developments such as the dismissal of some counts for lack of evidence or reversal of less than all convictions render the initial joinder improper. <u>United States v. Lazarenko</u>, 564 F.3d 1026, 1043 (9th Cir. 2009) (citing <u>United States v. Vebeliunas</u>, 76 F.3d 1283, 1293-94 (2d Cir. 1996)). In considering whether a new trial should be granted based on prejudicial spillover, the court considers: "(1) whether the evidence was so inflammatory that it would tend to cause the jury to convict on the remaining counts; (2) the degree of overlap and

---

[5] Prejudicial spillover and retroactive misjoinder are closely related concepts and are sometimes used interchangeably. <u>Lazarenko</u>, 564 F.3d at 1042 n.10.

8

similarity between the dismissed and remaining counts; and (3) a general assessment of the strength of the government's case on the remaining counts." Id. at 1044 (citing Vebeliunas, 76 F.3d at 1294). The court should not grant a new trial based on prejudicial spillover unless the defendant proves "prejudice so pervasive that a miscarriage of justice looms." Id. at 1043 (citations omitted).

The trial court's instructions to the jury are a critical factor in assessing whether the jury could compartmentalize the evidence against each defendant on each charge, and "the fact that the jury rendered selective verdicts is highly indicative" of the jury's ability to do so. Id. (citation omitted). Further, prejudicial spillover is unlikely if the dismissed count and the remaining counts are very dissimilar. United States v. Hamilton, 334 F.3d 170, 183 (2d Cir. 2003) (citations omitted).

Here, it is not at all clear that an obstruction of justice charge based on deleting emails is any more inflammatory than allegations of bid rigging, the charges are very dissimilar, and the evidence of Katakis' participation in the bid rigging scheme was more than enough for a jury to convict him of the Sherman antitrust conspiracy charge. See Lazarenko, 564 F.3d at 1043-44; Hamilton, 334 F.3d at 182.

Moreover, the court carefully instructed the jury to consider each count and each defendant separately,[6] and the mixed

---
[6] Specifically, the court instructed the jury that:

Your verdict on one count should not control your verdict on any other count, and you do not have

9

verdicts reached by the jury tend to show that the obstruction of justice evidence was not so inflammatory that it would tend to cause the jury to convict on the remaining counts. Rather than convict all defendants on all charged counts, the jury acquitted defendant Longley on the antitrust conspiracy charge, convicted Katakis and Parker on that charge, convicted Katakis on the obstruction of justice charge, and could not reach a verdict on the mail fraud counts against Katakis and Parker. Thus, it appears that the jury was able to "compartmentalize" the evidence as it relates to each charge and defendant. See Lazarenko, 564 F.3d at 1043.

In making this determination, the court notes that even absent the obstruction of justice count, it would have admitted evidence regarding Katakis' attempts to delete emails under Federal Rules of Evidence 404(b) and 403 had the obstruction of justice count been dismissed before trial. Evidence of other crimes or wrongs is admissible under Rule 404(b) where 1) a preponderance of the evidence shows that the defendant committed the other act; 2) the conduct is not too remote in time from the charged offense; 3) in certain cases, the other act is similar to

---

> to return the same verdict for all counts . . . .
> Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendant. The fact you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendant.

(Instruction No. 12 (Docket No. 268).)

10

crime charged; and 4) the conduct tends to prove an element of the charged offense that is a material issue in the case. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir. 1989).

Here, evidence regarding Katakis' attempts to delete emails after learning about the government investigation was highly probative in showing Katakis' consciousness of guilt, which outweighs any dangers of unfair prejudice. See United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996) (evidence of defendants' attempts to induce witnesses to lie is indicative of consciousness of guilt and is admissible). As discussed by the Ninth Circuit, even though the evidence was insufficient to show that Katakis actually deleted the emails as charged, there was very strong evidence Katakis attempted to delete emails after learning about the government's investigation. The court also finds that the attempted deletion, one year after the end of the bid rigging conspiracy, was not too remote in time. See Miller, 874 F.2d at 1268 (holding that two year gap between charged offense and other act was not too remote in time for other act to be admissible under Rule 404(b)).

Moreover, the court need not find that Katakis' attempted email deletion was similar to the other charged offenses in order to admit the DriveScrubber evidence, because that evidence would be used to show consciousness of guilt. See Collins, 90 F.3d at 1428 (admission of evidence of attempts to induce witnesses to lie was proper on felon in possession charge). Finally, the evidence tends to show that Katakis

knowingly participated in the bid rigging conspiracy, an essential element of the conspiracy count.[7]

Overall, the court finds that neither Katakis nor Parker have shown "prejudice so pervasive that a miscarriage of justice looms" based on the admission of the DriveScrubber evidence. See Lazarenko, 564 F.3d at 1043. Accordingly, the court declines to grant a new trial based on any purported prejudicial spillover.

3. Prosecutorial misconduct

Katakis' next argument is that he is entitled to a new trial because of prosecutorial misconduct. Specifically, he contends that the government committed misconduct by 1) pursuing its obstruction of justice charge when it had no theory or evidence regarding how Katakis actually deleted emails; and 2) stating during closing arguments that there were no payoffs

---

[7] If Katakis' obstruction of justice count had been dismissed before trial, the court would have nevertheless allowed the DriveScrubber evidence but given a limiting instruction that the jury could consider it to infer Katakis' consciousness of guilt with respect to the antitrust conspiracy and mail fraud counts but not for any other purpose. However, "the failure of the court to give [such] an instruction will not necessarily result in reversible error." See United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir. 1982). As it was, Katakis was likely better off not having such an instruction, which would specifically direct the jury that it could consider the DriveScrubber evidence in deciding his other counts, whereas the instructions actually given at trial told the jury that its "verdict on one count should not control [its] verdict on any other count." (Instruction No. 12.) Moreover, as discussed earlier, the jury's mixed verdicts on each charge and as to each defendant tend to show that the jury followed the court's instructions to weigh the evidence as to each count and defendant separately. Thus, the failure to give a limiting instruction that the DriveScrubber evidence was only to be used to show consciousness of guilt does not warrant a new trial.

12

between Katakis' co-conspirators Ken Swanger, Richard Northcutt, and Wiley Chandler.[8]

While a prosecutor may ask the jury to draw inferences from the evidence that he or she believes in good faith might be true, the court may grant a new trial where the government "propound[s] inferences that it knows to be false, or has very strong reason to doubt." United States v. Blueford, 312 F.3d 962, 968 (9th Cir. 2002) (granting new trial based on prosecutorial misconduct). However, the court will not grant a new trial based on prosecutorial misconduct where the error was harmless.[9] Id. at 973-74. An error is harmless if it "does not affect substantial rights" of the defendant, meaning it does not "affect the outcome of the district court proceedings." Fed. R. Crim. P. 52(a); United States v. Mitchell, 568 F.3d 1147, 1150 (9th Cir. 2009) (alterations omitted) (quoting United States v. Olano, 507 U.S. 725, 734-35 (1993)).

Here, the court is not convinced that the government engaged in misconduct, much less that the outcome of trial would have been different absent any misconduct. The court agrees that the evidence did not show that Katakis successfully deleted or destroyed any emails, and it thus granted Katakis' motion for acquittal on that basis. However, the court disagrees that the

---

[8] Parker joins in Katakis' arguments here without raising any additional points.

[9] The court assumes, for the purposes of this motion, that Katakis properly preserved his objections regarding prosecutorial misconduct. However, if the objections were not properly preserved, then plain error review would apply. Blueford, 312 F.3d at 973-74.

evidence was so clear, especially given the highly technical nature of the evidence, that the government must have known that it was asserting a groundless charge at trial or had very strong reason to doubt its theory. Moreover, the court finds that any error was harmless, because there was very strong evidence that Katakis intended to and attempted to destroy emails, and, as discussed above, the court would have allowed evidence on this attempted obstruction to come in as evidence of "other acts" under Rule 404(b).

Similarly, the court does not find that there was no basis for the government's representation of financial dealings between Katakis' co-conspirators, and the court does not find that the government had very strong reason to doubt its characterization of those dealings. Notwithstanding the evidence produced after trial showing Ken Swanger's financial ties with Northcutt and Chandler, Katakis has not shown that the government knew that its statements were false or at a minimum should have doubted the truthfulness of its statements.

Nor has Katakis shown that the outcome of trial would have been different without the government's statements, as Katakis' theory that he was an innocent party swindled by the real conspirators was asserted by his counsel at trial, including through examination of multiple witnesses on the financial dealings between the co-conspirators. The jury was properly instructed that the statements of counsel are not evidence, alleviating at least in part any harm from any misstatements by the government during closing argument. (<u>See, e.g.</u>, Instruction No. 5. ("Arguments and statements by lawyers are not evidence . .

. . If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.").) Thus, the court declines to grant a new trial based on any purported prosecutorial misconduct.

   4.   <u>Ambiguous jury instructions</u>

Katakis' next argument is that he deserves a new trial because the jury instructions on aiding and abetting were ambiguous when applied to his Sherman Act antitrust conspiracy, as they did not properly inform the jury what mental state was required to convict Katakis for aiding and abetting a conspiracy.[10]

A defendant may be entitled to a new trial where there is a reasonable likelihood that the jury applied the challenged instructions in a way that violated the Constitution. <u>Jones v. United States</u>, 527 U.S. 373, 390 (1999). The court evaluates the instructions as a whole in determining whether jury instructions are misleading or inadequate to guide the jury's deliberations. <u>United States v. Chang Da Liu</u>, 538 F.3d 1078, 1088 (9th Cir. 2008).

Here, Katakis and Parker have not shown the required reasonable likelihood that the jury applied the court's aiding and abetting instruction in a way that violated the Constitution. After instructing the jury on the specific elements of a Sherman antitrust conspiracy, mail fraud, and obstruction of justice, the court gave the following instruction regarding aiding and abetting:

---

[10] Parker joins in Katakis' arguments here without raising any additional points.

15

> A defendant may be found guilty of a crime charged even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a defendant guilty because the defendant aided and abetted in the commission of the crime, the government must prove the following beyond a reasonable doubt:
>
> First, the crime charged was committed by someone;
>
> Second, the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that person to commit each element of the crime charged; and
>
> Third, the defendant acted before the crime was completed.
>
> It is not enough that a defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime charged.

(Instruction No. 21.)

At trial, no defendant objected to this instruction, and the court is not convinced that this instruction, read in conjunction with the court's other instructions to the jury, is erroneous. This instruction largely tracks the Ninth Circuit's pattern jury instruction on aiding and abetting, and no defendant has presented the court with any authority showing that giving an aiding and abetting instruction along with a Sherman antitrust conspiracy instruction (or the instruction for any type of conspiracy), without further guidance, is improper.

If anything, the jury's question to the court, whether the defendant must have had the "motive . . . to eliminate

16

competition" for a Sherman Act antitrust violation, (Docket No. 272), indicates that the jury may have sought to apply a higher burden than necessary, as the defendant need not have the intent to eliminate competition. In order to find a defendant guilty of a Sherman Act antitrust conspiracy based on bid rigging, the government need only prove "the defendants' intentional participation in the conspiracy to rig bids," and does "not have to prove the defendants' specific intent to unreasonably restrain trade." United States v. Brinkley & Son Constr. Co., 783 F.2d 1157, 1162 (4th Cir. 1986) (citation omitted); see also United States v. Brown, 936 F.2d 1042, 1046 (9th Cir. 1991) (where defendant is charged with per se violation of the Sherman Act, government need not prove intent to produce anticompetitive effects, as a finding of intent to conspire to commit the offense is sufficient).

As this court noted during the discussion of jury instructions with counsel, see Katakis Ex. 8 at 225-226 (Docket No. 614), the whole idea of aiding and abetting a conspiracy, or conspiring to aid and abet, seems redundant to say the least, but any confusion resulting from this theory and the related instructions would inure to the benefit of the defendants, not the government. Further, the jury asked no questions regarding Instruction No. 21, the aiding and abetting instruction, and neither Katakis nor Parker challenge Instruction No. 15 or any of the other instructions regarding the Sherman Act violation on the motion for a new trial. Thus, there is no indication that the jury was confused regarding the concept of aiding and abetting.

Even assuming the jury instructions were erroneous, though, the court finds that there is no reasonable likelihood that giving the aiding and abetting instruction caused the jury to convict Katakis without finding that all the elements of an antitrust conspiracy had been proven. The court reaches this conclusion noting the persuasive evidence of both Katakis' and Parker's direct involvement in the bid rigging conspiracy, notwithstanding Katakis' characterization to the contrary. Accordingly, the court declines to grant a new trial based any purported ambiguity in the jury instructions.

### 5. Cumulative effect

Katakis' and Parker's final argument is that even assuming none of the alleged errors listed above were prejudicial enough to warrant a new trial, their cumulative effect requires reversal on their antitrust conspiracy convictions. Notwithstanding Katakis' and Parker's arguments to the contrary, the court does not find that the alleged prejudicial spillover, alleged prosecutorial misconduct, and alleged erroneous jury instructions collectively show that the trial was rendered fundamentally unfair. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007). Thus the court declines to grant Katakis or Parker a new trial based on cumulative error.

### 6. Ineffective assistance of counsel

Katakis previously argued that he was entitled to a new trial based on ineffective assistance of counsel for failure to investigate and call certain witnesses that purportedly would provide exculpatory evidence. (See Katakis Mot. for New Trial on Grounds of Ineffective Assistance of Counsel (Docket No. 444).)

At the close of a two-day evidentiary hearing, the court orally found, for the reasons stated, that Katakis' former counsel was not ineffective in failing to investigate and then call those witnesses at trial. (Tr. 460-465 (Docket No. 487).) Katakis withdrew the remaining grounds of his claim of ineffective assistance of counsel shortly after the hearing. (See Katakis Notice of Withdrawal of Remaining Grounds for Claim of Ineffective Assistance of Counsel (Docket. No. 492).) The court reaffirms its prior ruling at the evidentiary hearing and finds that there are no grounds for finding that Katakis' trial counsel was in any way ineffective. Thus the court declines to grant Katakis a new trial based on ineffective assistance of counsel.[11]

IT IS THEREFORE ORDERED that the defendant Katakis' Second Amended Motion for New Trial (Docket No. 611) and defendant Parker's joinder in Katakis' motion (Docket No. 622) be, and the same hereby are, DENIED.

Dated: May 11, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[11] Parker did not join in Katakis' motion for a new trial based on ineffective assistance of counsel. Nevertheless, the court does not find that Parker's counsel rendered ineffective assistance in any way.

19